**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1180
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective*
*Plaintiffs, and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| DAVID ESQUIVEL<br>*on behalf of himself, FLSA Collective Plaintiffs,*<br>*and the class,*<br><br>            Plaintiff,<br><br>   v.<br><br>1285 ROYALE GOURMET DELI AND<br>GROCERY CORP.,<br>     d/b/a ROYALE GOURMET DELI,<br>YAHYA ALZINDANI, and<br>JOHN DOES 1-5<br>           Defendants. | Case No.:<br><br>**CLASS AND COLLECTIVE**<br>**ACTION COMPLAINT**<br><br>Jury Trial Demanded |

---

Plaintiff, DAVID ESQUIVEL (hereinafter, "Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants, 1285 ROYALE GOURMET DELI AND GROCERY CORP., d/b/a ROYALE GOURMET DELI, ("Corporate Defendant"), YAHYA ALZINDANI, and JOHN DOES 1-5 ("Individual Defendants," collectively with Corporate Defendant, "Defendants") and states as follows:

<u>**INTRODUCTION**</u>

1.     Plaintiff alleges, pursuant to the Fair Labor Standards Act as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), that he, FLSA Collective Plaintiffs, and similarly situated individuals are

entitled to recover from Defendants: (1) unpaid overtime premiums; (2) liquidated damages; and (3) attorney's fees and costs.

2.      Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL"), he and others similarly situated are entitled to recover from Defendants: (1) unpaid overtime premiums; (2) statutory penalties; (3) liquidated damages; and (4) attorney's fees and costs.

3.      Plaintiff further alleges that Defendants breached their contract with Plaintiff and Class Members by failing to pay employer payroll taxes for Plaintiff and Class Members, as required by the Federal Insurance Contribution Act ("FICA"). Plaintiff also alleges that, in retaining these sums for themselves, Defendants unjustly enriched themselves at the expense of Plaintiff and Class Members.

4.      Plaintiff further alleges, on an individual basis, pursuant to the FLSA, that he is entitled to recover from Defendants: (1) unpaid wages, (2) liquidated damages, and (3) attorney's fees and costs.

5.      Plaintiff further alleges, on an individual basis, pursuant to the NYLL, that he is entitled to recover from Defendants: (1) unpaid wages, (2) liquidated damages, and (3) attorney's fees and costs.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

7.      Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

## PARTIES

8.      At all relevant times herein, Plaintiff ESQUIVEL, was and is a resident of Bronx County, New York.

9.      Defendants collectively own and operate a deli under the tradename "Royale Gourmet Deli" ("Royale Gourmet") located at 1285 Southern Boulevard, Bronx, NY, 10459.

10.     Defendants operate Royale Gourmet through Corporate Defendant 1285 ROYALE GOURMET DELI AND GROCERY CORP., d/b/a ROYALE GOURMET DELI, a domestic business corporation organized under the laws of New York with a principal place of business and an address for service of process located at 1285 Southern Boulevard, Bronx, NY, 10459.

11.     Individual Defendant YAHYA ALZINDANI is the principal, executive officer, and shareholder of Corporate Defendant. *See* **Exhibit A**, Public Inquiry. YAHYA ALZINDANI exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs, and the Class. YAHYA ALZINDANI exercises — and also delegates to managers and supervisors— the power to fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs, and the Class. At all times, employees of the Deli could complain to YAHYA ALZINDANI directly regarding any of the terms of their employment, and YAHYA ALZINDANI would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees. YAHYA ALZINDANI exercised functional control over the business and financial operations of Corporate Defendant. YAHYA ALZINDANI had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs, and Class Members, and could reprimand employees.

3

12.     Individual Defendants JOHN DOES 1-5 are co-owners of Corporate Defendant. Each JOHN DOE exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs, and the Class. Each JOHN DOE exercises —and also delegates to managers and supervisors— the power to fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs, and the Class. At all times, employees of Royale Gourmet could complain to each JOHN DOE directly regarding any of the terms of their employment, and such persons would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees. Each JOHN DOE exercised functional control over the business and financial operations of Corporate Defendant. Each JOHN DOE had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs, and Class Members, and could reprimand employees.

13.     At all relevant times, Corporate Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA, the NYLL, and regulations thereunder.

14.     At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class Members was directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

15.     Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees (including deli-men, counterpersons, deliverymen, food preparers, cashiers, and dishwashers) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case, as defined herein.

16.    At all relevant times, Plaintiff and other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in unpaid wages, including overtime premiums. The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

17.    The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

18.    Plaintiff brings claims for relief pursuant to Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees (including deli-men, counterpersons, deliverymen, food preparers, cashiers, and dishwashers) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case, as defined herein (the "Class" or "Class Members").

19.    The Class Members are readily ascertainable. The number and identities of the Class Members are able to be determined from the records of Defendants. The hours assigned and worked, the position(s) held, and rate(s) of pay for each Class Member are also able to be determined from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

20.     The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number is presently based are within the sole control of Defendants. There is no doubt that there are more than forty (40) members of the Class.

21.     Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class Members were subject to the same corporate practices of Defendants of: (i) failing to pay wages due to incorrect overtime rate; (ii) failing to provide proper wage statements per requirements of NYLL; and (iii) failing to properly provide wage notices to Class Members, at the date of hiring and annually, per requirements of the NYLL.

22.     Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

23.     Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

24.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated

persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

25.    Defendants and other employers throughout the state violate New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

26.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a.   Whether Defendants employed Plaintiff and the Class within the meaning of New York law and applicable state laws;

b.   What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and Class Members properly;

c.   At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and Class Members for their work;

d.   Whether Defendants properly notified Plaintiff and Class Members of their hourly rates and overtime rates; and

e.   Whether Defendants properly compensated Plaintiff and Class Members their overtime rates of one-and-one-half-times their base hourly rates for all hours worked in excess of forty (40) each workweek under the NYLL;

## STATEMENT OF FACTS

27.   Plaintiff was hired by Defendants to work as a Deliman for Defendants' "Royale Gourmet Deli" located at 1285 Southern Boulevard, Bronx, NY, 10459. Plaintiff was employed from in or around February 2020 until in or around June 2024.

28.   During his employment, Plaintiff was scheduled to work as follows:

(i) From February 2020 until January 2024, Plaintiff was scheduled to work seven (7) days per week from 4:00 p.m. to 12:00 a.m. Monday through Saturday, and from 4:00 p.m. until 7:00 p.m. on Sunday, for a total of fifty-one (51) hours per week.

(ii) From January 2024 until the end of his employment, Plaintiff was scheduled to work six (6) days per week, Monday through Saturday, from 4:00 p.m. to 12:00 a.m. for a total of forty-eight (48) hours per week.

29.     During his employment, Plaintiff was compensated as follows:

(i)     From February 2020 to around January 2023, he was compensated at a straight rate of seventeen dollars ($17) per hour.

(ii)    From around January 2023 to December 2023, he was compensated at a straight rate of twenty-eight dollars ($26) per hour.

(iii)   From around December 2023 until the end of his employment in June 2024, his pay was reduced back down to eighteen dollars ($18) per hour.

30.     At all relevant times, Plaintiff was compensated at straight rate. Despite regularly working weeks that ran eight (8) to eleven (11) hours over the forty (40) hours required to earn time-and-a-half premiums, Plaintiff was paid the same rate for all hours worked. *See* **Exhibit** B, Plaintiff's Timecards with weekly pay written on them. Similarly, FLSA Collective Plaintiffs and Class Members regularly worked over forty (40) hours per week, but Defendants failed to pay them the proper overtime premium rate of one-and-half-times their regular hourly rate for each hour exceeding forty (40) hours per workweek including due to time shaving, in violation of the FLSA and the NYLL.

31.     Plaintiff regularly complained to the manager Ibrahim and an individual, Mustafa Ali, whom Plaintiff believed to be an owner, regarding his unpaid overtime. His first complaint was two weeks into his employment with Defendants. Plaintiff noticed that he was working a lot of overtime but was not being paid at an overtime rate. Upon receiving Plaintiff's complaint, Defendants informed him that "we don't pay overtime for your job." Plaintiff continued to

complain regularly, but was eventually forced to stop as Defendants became upset with his complaints and Plaintiff did not wish to lose his job with them.

32.    Furthermore, Plaintiff received no compensation whatsoever for the last two weeks that he worked for Defendants. Despite working his normal schedule, Defendants never issued Plaintiff his final paycheck after he quit.

33.    During his employment, Plaintiff would be paid in cash. Plaintiff, FLSA Collective Plaintiffs and Subclass Members also suffered similarly from being paid in cash.

34.    As a result of Defendants paying Plaintiff, FLSA Collective Plaintiffs, and Class Members in cash, Defendants failed to provide Plaintiff, FLSA Collective Plaintiffs, and Class Members with accurate IRS W-2 Forms for all the tax years of their employment and failed to properly record, account for, and report to the IRS all monies paid to Plaintiff, FLSA Collective Plaintiffs, and Class Members. In violating the Internal Revenue Code by failing to provide proper W-2 forms, Defendants also breached their contract with Plaintiff and Class Members to pay the employer's share of Social Security and Medicare taxes for each employee.

35.    Defendants also unjustly enriched themselves at the expense of Plaintiff, FLSA Collective Plaintiffs, and Class Members by retaining monies that should have been remitted to the IRS on behalf of Plaintiff, FLSA Collective Plaintiffs, and Class Members.

36.    As a result, Plaintiff, FLSA Collective Plaintiffs, and Class Members will either (1) be liable to the IRS for the employer's share of FICA taxes or (2) upon retirement suffer from diminished Social Security and Medicare benefits because they did not pay enough into the system.

37.    The employer's share of Social Security taxes is 6.2%. The employer's share of Medicare taxes is 1.45%. Accordingly, Defendants must compensate Plaintiff, FLSA Collective

Plaintiffs, and each Class Member 7.65% of all their earnings from Defendants beginning six years prior to the filing of this Complaint.

38.     Even if Defendants could show that they paid some employees a part of their wages in check and filed the appropriate W-2s for those checks, Defendants would remain liable to those employees for failing to pay FICA taxes on the cash portion of their wages.

39.     Defendants never provided Plaintiff and Class Members with wages notices at hiring, as required by New York Lab. Law § 195(1).

40.     Plaintiff and Class Members did not receive any wage statements from Defendants, as required under NYLL. The wages were disbursed to Plaintiff and Class Members in cash. The payments do not include any information related to regular and overtime rates of pay, regular and overtime hours worked, gross wages, deductions, allowances, and net wages as required by New York Lab. Law § 195(3).

41.     Therefore, Defendants directly violated the Wage Theft Protection Act ("WTPA")—incorporated in the NYLL—when Defendants knowingly and willfully operated their business with a policy of not providing wage notices and providing inaccurate wage statements to Plaintiff and Class Members.

42.     In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. As one Court observed:

> Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010 S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the

11

wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs.*, 2020 U.S. Dist. LEXIS 49740, *21-22 (S.D.N.Y. March 20, 2020)

43.    Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff and Class Members. Defendants' conduct actually harmed Plaintiff and Class Members. Defendants' failure to provide wage notices and paystubs listing all hours actually worked and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest the pay provided by Defendants, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiff's and Class Members' rights. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Defendants' failure to provide wage notices and wage statements to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

44.    Had Defendants provided proper wage statements to Plaintiff and Class Members which accurately listed the total number of hours Plaintiff and Class Members actually worked, as required by law, Defendants would have had to either (a) increase the wages to correspond to the hours actually worked or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the hours the employee actually worked. Either possibility would have allowed Plaintiff and Class Members to vindicate their rights under the NYLL. The deprivation of these possibilities therefore constitutes an injury.

45.     The direct effect of understating the number of hours an employee worked is to reduce the wages that employees are listed as having earned on their wage statements. The direct effect of this, in turn, is to reduce the employee earnings that the employer later reports to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. *See Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-21 and paystub dated 12/24/20, is $130,321.30"); *T.F. v. N.F.*, 820 N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $ 133,086 as reflected on his final year paystub and W-2").[1]

46.     The effect of reporting reduced wages on an employees' W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, *7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co.*, 2011 U.S. Dist. LEXIS 74543, *3 (N.D. Ill. July 8, 2011)

---

[1] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paystubs. The paystub processing service *realcheckstubs* explains: "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

47.     "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, 2023 U.S. Dist. LEXIS 38163, *18 (S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y.*, LLC, 2023 U.S. Dist. LEXIS 122504, *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, *4 (S.D.N.Y. July 14, 2022)).

48.     Here, it is clear that Defendants' failure to provide Plaintiff and Class Members with accurate wage statements entailed "concrete, downstream consequences" involving monetary injury. Had the number of hours been accurately reported for a given pay period, Defendant's payroll system would have correspondingly increased the wages due for that period, which in turn would have been reflected in the W-2s that Defendants submitted to the IRS on behalf of Plaintiff and Class Members. That, in turn, would have increased Plaintiff's and Class Members' entitlement to social security benefits. Because the inaccuracy prevented this outcome, it constitutes an injury sufficient to provide Plaintiff with Article III standing.

49.     Courts agree that the misreporting of wages constitutes a concrete injury cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because

> "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id.* at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan. Id.* Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id.* "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income." *Id.*

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

50.    The case at bar is somewhat different from *Coward* inasmuch as Defendants actually underpaid Plaintiff and other employees rather than merely misreporting their income. But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id.* Plaintiff and Class members lost benefits by virtue of how Defendants reported their income, and how Defendants reported employees' income was the direct outcome of the inaccuracies in employees' wage statements. That is why "Plaintiffs have standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

51.    Whether or not any Class Members are presently eligible for social security benefits is legally immaterial. *See id.* ("Although only citizens and aliens residing in the United States may receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

52.    The *Calderon* court stressed that an employee's interest in ensuring that an employer properly report the employee's income is amplified by the difficulty of persuading the government to correct errors:

> The practical difficulty is that eligibility for Social Security benefits presumptively depends on reports that employers send to the government. A worker who seeks credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not furnished the customary

documentation. The government believes employers who report earnings, because these reports are costly to make--they entail paying a substantial tax. The government tends not to believe undocumented claims by employees, because these claims are essentially costless yet could establish entitlement to large pensions or disability benefits.

All of this means that the plaintiffs' real interest lies in ensuring that the Witvoets make the proper reports of their income.

*Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993)

53.    Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiff was irreversibly injured with respect to his social security benefits as soon as Defendants sent his W-2 to the IRS. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

54.    Defendants knowingly and willfully operated their business with a policy of not paying the proper overtime rate for hours worked over forty (40) in a workweek, in violation of the FLSA and the NYLL.

55.    Defendants knowingly and willfully failed to compensate Plaintiff for his final two weeks of work in violation of the FLSA and the NYLL.

56.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices, at the beginning of employment and annually thereafter, pursuant to the requirements of the NYLL.

57.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required by the NYLL.

58.    Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and Class Members.

## **STATEMENT OF CLAIM**

## COUNT I

## <u>VIOLATION OF FAIR LABOR STANDARDS ACT</u>
**(on behalf of Plaintiff and the FLSA Collective Plaintiffs)**

59.    Plaintiff realleges and reavers all the foregoing paragraphs as if fully set forth herein.

60.    At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207(a).

61.    At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of FLSA.

62.    At all relevant times, Corporate Defendants had gross annual revenues in excess of $500,000.

63.    At all relevant times, Defendants had a policy and practice of failing to pay Plaintiff and FLSA Collective Plaintiffs' overtime premiums.

64.    Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case, and if necessary, will seek leave of Court to amend this Complaint to set forth the precise amount due.

65.    Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs proper wages, including overtime, when Defendants knew or should have known such was due.

66.    Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective

Plaintiffs of their rights under the FLSA.

67.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

68.     Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid overtime wages, plus an equal amount as liquidated damages.

69.     Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorney's fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## VIOLATION OF NEW YORK LABOR LAW
### (on behalf of Plaintiff and the Class)

70.     Plaintiff realleges and reavers all the foregoing paragraphs as if fully set forth herein.

71.     At all relevant times, Plaintiff and Class Members were employed by Defendants within the meaning of NYLL §§ 2 and 651.

72.     At all relevant times, Defendants knowingly and willfully violated Plaintiff's and Class Members' rights by failing to pay them overtime compensation at the rate of not less than one and one-half times the regular rate of pay for each hour worked in excess of forty (40) hours each workweek, in direct violation of the NYLL.

73.     Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and Class Members proper wage notice, at date of hiring and annually thereafter, as required under the NYLL.

74. Defendants knowingly and willfully operated their business with a policy of not providing wage statements, as required under the NYLL.

75. Due to Defendants' NYLL violations, Plaintiff and Class Members are entitled to recover from Defendants unpaid wages, including overtime premiums, reasonable attorney's fees, liquidated damages, statutory penalties, and costs and disbursements of the action, pursuant to the NYLL.

## COUNT III

## VIOLATION OF THE FAIR LABOR STANDARDS ACT
### (individually on behalf of Plaintiff)

76. Plaintiff realleges and reavers all the foregoing paragraphs as if fully set forth herein.

77. At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207(a).

78. At all relevant times, Defendants employed Plaintiff within the meaning of FLSA.

79. At all relevant times, Corporate Defendants had gross annual revenues in excess of $500,000.

80. Defendants failed to pay Plaintiff his lawful wages for all hours worked in the last two weeks he worked for Defendants.

81. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff his proper wages, including overtime, when Defendants knew or should have known such was due.

82. As a direct and proximate result of Defendants' willful disregard of the FLSA,

Plaintiff is entitled to liquidated (i.e., double) damages pursuant to the FLSA.

83.    Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid overtime wages, plus an equal amount as liquidated damages.

84.    Plaintiff is entitled to an award of his reasonable attorney's fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT IV

### VIOLATION OF THE NEW YORK LABOR LAW
#### (individually on behalf of Plaintiff)

85.    Plaintiff realleges and reavers all the foregoing paragraphs as if fully set forth herein.

86.    At all relevant times, Plaintiff was employed by Defendants within the meaning of NYLL §§ 2 and 651.

87.    Defendants knowingly and willfully violated Plaintiff's rights by failing to pay him his lawful wages for the last two weeks Plaintiff worked for Defendants, in direct violation of the NYLL.

88.    Due to Defendants' NYLL violations, Plaintiff is entitled to recover from Defendants unpaid wages, including overtime premiums, reasonable attorney's fees, liquidated damages, statutory penalties, and costs and disbursements of the action, pursuant to the NYLL.

## COUNT V

### BREACH OF CONTRACT

89.    Plaintiff realleges and reavers all the foregoing paragraphs as if fully set forth herein.

90.    "In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance … This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract … [T]he duties of good faith and fair dealing … encompass any promises which a reasonable person in the position of the promisee would be justified in understanding were included [in the contract]." *511 W. 232nd Owners Corp. v. Jennifer Realty Co*., 98 N.Y.2d 144, 153, 773 N.E.2d 496, 500-501, 746 N.Y.S.2d 131, 135-136, 2002 N.Y. LEXIS 1579, *10-11 (2002).

91.    When Plaintiff and Class Members accepted offers of employment form Defendants, the parties entered a contract, and the covenant of good faith and fair dealing implicit therein required Defendants to pay Plaintiff and Class Members in accordance with all applicable laws. This involved, *inter alia*, a duty by abide by the Internal Revenue Code and pay all required FICA taxes.

92.    Defendants breached this duty when they decided to pay Plaintiff and Class Members in cash and not file proper W-2. As a result, Plaintiff and Class Members lost part of the benefit of the bargain for which they contracted, suffering a loss in the amount of the FICA taxes that Defendants should have paid on their behalf but did not.

## COUNT VI

## UNJUST ENRICHMENT

93.    Plaintiff realleges and reavers all the foregoing paragraphs as if fully set forth herein.

94.    To state a claim for unjust enrichment, a plaintiff must allege that: "(1) the [defendant] was enriched, (2) at [plaintiff's] expense, and (3) that it is against equity and good

conscience to permit the [defendant] to retain what is sought to be recovered." *Georgia Malone & Co., Inc. v Rieder*, 19 NY3d 511, 516, 973 NE2d 743, 950 NYS2d 333 (2012) (internal quotations omitted).

95.     Defendants were unjustly enriched when they kept for themselves money that should have been paid to the Internal Revenue Service as Defendants' employer FICA contribution. Such came at the expense of Plaintiff and Class Members because they will either (1) be liable to the IRS for the employer's share or (2) upon retirement suffer from diminished Social Security and Medicare benefits because they did not pay enough into the system.

96.     Accordingly, all sums that Defendants should have paid to the IRS should be disgorged from Defendants and transferred to Plaintiff and Class Members.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs, and Class Members, respectfully requests that this Court grant the following relief:

a.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

b.  An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.  An award of unpaid overtime premium due under the FLSA and the NYLL;

d.  An award of unpaid wages due under the FLSA and the NYLL;

e. Contractual damages for Defendants' failure to keep their promise to abide by the Internal Revenue Code and fund Plaintiff's and Class Members' retirement through FICA contributions;

f. Disgorgement from Defendants of all illegally retained sums that should have gone into FICA contributions;

g. An award of liquidated damages for Defendants' violations under the FLSA and the NYLL;

h. An award of statutory penalties, prejudgment, and post judgment interest, costs, and expenses of this action together with reasonable attorney's fees and expert fees;

i. Designation of Plaintiff as Representatives of FLSA Collective Plaintiffs;

j. Designation of this action as a class action pursuant to F.R.C.P. 23;

k. Designation of Plaintiff as Representatives of the Class; and

l. Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.


Date: February 24, 2025,
New York, New York

Respectfully submitted,

By:  /s/ *CK Lee*

C.K. Lee, Esq.
**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 W. 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1180
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs*
*and the Class*